IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CYNTHIA L. OFFIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 2:11-cv-47 |
| v. | ) |
| | ) Chief Judge Gary L. Lancaster |
| WINNER HOTELS CORP. d/b/a | ) Chief Magistrate Judge Lisa Pupo Lenihan |
| RADISSON HOTEL, SHARON, *et al.*, | ) |
| | ) ECF No. 30 |
| Defendants. | ) |
| | ) |
| | ) |

## REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

It is respectfully recommended that Defendants' Motion for Partial Dismissal of Plaintiff's Amended Complaint (ECF No. 30) pursuant to Rule 12(b)(6) be granted in part and denied in part.  It is further recommended that Defendants' Motion to Strike Statement of Facts paragraphs 4 through 9 and 26 from the Amended Complaint as irrelevant and prejudicial be granted in part and denied in part.

### II.     REPORT

In this employment discrimination case, Plaintiff has brought claims alleging sex-based discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.* (Count I*)*, age-based discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§621 *et seq.* (Count III), and retaliation in violation of Title VII (Count VII).  Plaintiff also asserts claims for discrimination based on sex and age (Counts II & IV) and retaliation (Count VIII) in violation of the

Pennsylvania Human Relations Act, 43 P.S. §§959 *et seq.* ("PHRA").[1]    In addition, Plaintiff

appears to have included claims for harassment and/or hostile work environment within Counts I

through IV and paragraphs 7 and 26 of her Amended Complaint, Statement of Facts ("SOF").

(ECF No. 28 at 4, 6-9).  Similarly, Plaintiff asserts claims for disparate treatment in wages, work

opportunities, and working conditions based on sex and age within Counts I through IV and the

SOF, paragraphs 4 and 5, of the Amended Complaint.  (ECF No. 28 at 3-4, 7-9.)

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331,

1367, 42 U.S.C. §2000e-5(f), and 29 U.S.C. §626(c).    Venue lies in this district as the acts

alleged in support of the Plaintiff's employment discrimination claims occurred here.

Defendants seek to dismiss, in part, Plaintiff's Amended Complaint, and in support,

submit that Plaintiff has failed to exhaust her administrative remedies with regard to the

following claims:  (1) retaliation in Counts VII and VIII, (2) harassment and/or hostile work

environment in Counts I through IV, and (3) disparate treatment in wages, work opportunities,

and working conditions based on sex and age in Counts I through IV.  In addition, Defendants

move to dismiss Plaintiff's gender-based harassment/hostile work environment claim for failure

to assert sufficient facts to establish a required element of that claim, i.e., that the alleged

harassment was severe or pervasive.  Defendants seek dismissal of Plaintiff's claim of disparate

treatment in work opportunities on the additional basis that "work opportunities" do not

constitute an adverse employment action as a matter of law.  Finally, Defendants argue that

Plaintiff's allegations of co-employer liability fail to assert sufficient facts to establish such

liability as to Defendants Janus Hotels, HELP and Janus American, and therefore the claims

against them must be dismissed in their entirety.  In the event the Court recommends granting

---

[1] The counts of Plaintiff's Amended Complaint are not numbered sequentially, as the Amended
Complaint does not contain either a count V or count VI.

their motion to dismiss, Defendants request that the allegations in the Amended Complaint, Statement of Facts, Paragraphs 4 through 9 and 26 (ECF No. 28 at ), be stricken pursuant to Rule 12(f) on the basis that those allegations are irrelevant to the remaining claims and will result in prejudice to Defendants.

A.   **Relevant Facts**

On December 16, 1999, Cynthia Offie ("Plaintiff" or "Offie") began working for Defendant Winner Hotels Corporation d/b/a Radisson Hotel, Sharon (hereinafter the "Radisson") as a bartender/manager.  (Fed. Am. Compl., Statement of Facts Common to All Counts ("SOF") ¶1, ECF No. 28 at 3.)  In November of 2005, the Radisson hired Defendants Janus Hotels and Resorts ("Janus Hotels") and/or Janus American Group, Inc. ("Janus American") (collectively "Janus") to manage its hotel.  (Fed. Am. Compl., Parties ¶¶3-4, 6, ECF No. 28 at 2.)      After Janus was hired to manage the Radisson, Plaintiff received correspondence periodically from both Janus Hotels at its locations in Boca Raton, Florida and Cincinnati, Ohio, and from Janus American at its location in Independence, Ohio.  (Fed. Am. Compl., Parties ¶¶3-5, ECF No. 28 at 1-2.)  Plaintiff asserts that from November of 2005 until her discharge on March 27, 2007, Janus was her co-employer with Radisson.  (Fed. Am. Compl., Parties ¶¶7, 10, ECF No. 28 at 2.)  In addition, Plaintiff contends that Defendant Hospitality Employee Leasing Program, Inc. ("HELP"), which has the same corporate address as Janus Hotels in Boca Raton, Florida, was her co-employer from November of 2005 until March 27, 2007.  (Fed. Am. Compl., Parties ¶¶8-9.)[2]

---

[2] Although not alleged in her federal amended complaint, Plaintiff asserts in her brief in opposition to the motion to dismiss that the Radisson hired Janus and HELP to manage the hotel in 2005 and that she continued to work for the Radisson after 2005 under the supervision of Janus and HELP.  (Pl.'s Br. in Opp'n at 3, ECF No. 35 at 3.)  In their brief in support of their motion to dismiss, Defendants submit that Janus Hotels and Resort engaged HELP, an employee leasing company, to lease employees to Janus Hotels and Resort for the operation of the Radisson.  (Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") at 3, ECF No. 31 at 3.)

Plaintiff further alleges that Janus and/or HELP were the agents of the Radisson at the time of her discharge on March 27, 2007. (Fed. Am. Compl., Parties ¶11, ECF No. 28 at 2.)

After several promotions, Offie was promoted to Food and Beverage Director/Assistant General Manager on November 9, 2005. (Fed. Am. Compl., SOF ¶3, ECF No. 28 at 3.) She succeeded Jon Blasko, who had been promoted to General Manager. (*Id.*) At the time of her discharge, Offie occupied the Food and Beverage Director/Assistant General Manager position, for which she received both a salary and commissions on banquet sales. Her annual compensation in that position was approximately $38,000.00 (*Id.* at ¶4.)

On or about March 23, 2007, Defendants began to administer drug and alcohol tests to employees at the Radisson, including Offie. (*Id.* at ¶10, ECF No. 28 at 4-5.) Although the results of her tests were negative, Offie alleges that Defendants' agents misrepresented that the results were positive. (*Id.* at ¶11, ECF No. 28 at 5.) Offie alleges that Defendants' agent, Scott Yeager, claimed that any drinking on the premise was in violation of Defendants' policy on alcohol consumption, and that she had violated that policy. (*Id.* at ¶12.) The alleged source of Yeager's claim is the policy statement in the HELP employee handbook, which provides:

> **DRUG AND ALCOHOL POLICY**
> HELP prohibits an employee's use, possession, distribution, sale or attempted similar conduct, of alcoholic beverages, illegal drugs or illegal controlled substances while performing HELP business, as well as employees reporting to work or working with alcohol, illegal drugs or illegal controlled substances or unprescribed controlled substances in their system. Employees who possess, distribute, or sell alcoholic beverages in connection with their job duties will not be considered in violation of this policy with regard to serving alcohol to Hotel guests. HELP may conduct drug and/or alcohol testing. Failure to follow this policy will result in discipline, up to and including termination.

Ex. A attached to Pl.'s Ex. 2 filed in support of Pl.'s Br. in Opp'n (ECF No. 35-2 at 11.)

Plaintiff acknowledged receiving a copy of this policy, but claims she had not violated it. According to Offie, the policy does not prohibit employees who are off-duty from drinking on the premises, and many employees, including Offie, would have a drink in the hotel's bar or restaurant after work was finished for the day or evening, or when they had a day off. (Fed. Am. Compl., SOF ¶13, ECF No. 28 at 5.)

On March 27, 2007, Offie was out of town on vacation when she was notified by others at the Radisson by 6:00 p.m. that her replacement was already on the premises and that management had cleaned out her office. Thereafter, at approximately 6:00 p.m., Scott Yeager telephoned Offie indicating that he wished to meet with her when she returned from vacation. Office claims that instead of meeting with her, Yeager discharged her by letter dated March 28, 2007. (*Id.* at ¶¶15-17.)

## B. Administrative Filings with PHRC/EEOC

Plaintiff filed a timely charge of discrimination with the Pennsylvania Human Relations Commission ("PHRC") on July 20, 2007 (hereinafter the "PHRC complaint"),[3] which was dual filed with the Equal Employment Opportunity Commission ("EEOC"). (Fed. Am. Compl., SOF ¶27, ECF No. 28 at 6.) In her PHRC Complaint, specifically the Discharge Questionnaire, Offie asserted claims of discrimination based on sex and age. (Discharge Quest. at ¶2, ECF No. 31-1 at 3.) Offie stated in the Discharge Questionnaire that the reasons given for her discharge were consuming alcohol on Hotel property and failing her drug and alcohol test conducted on 3/22/07. (*Id.* at ¶¶1, 6, ECF No. 31-1 at 3, 4.) Offie further asserted that Yeager's reasons for terminating her were untrue and that he was using these false statements to cover up the real reason for

_____

[3] The Discharge Questionnaire completed by Plaintiff is dated 7/20/07, however, it contains a date-stamp showing it was received by the PHRC on 8/1/07. (PHRC Compl., Ex. A to Defs.' Mem., ECF No. 31-1 at 8.) The original PHRC complaint served by PHRC on Respondent, Radisson, incorporated the Discharge Questionnaire as part of the complaint.

termination her.  (*Id*. at ¶10, ECF No. 31-1 at 5.)

In support of her charge of discrimination, Offie stated that she "was replaced by Robert Rehm, male."  (*Id*. at ¶1, ECF No. 31-1 at 3.)  Offie further stated:  "Due to the fact that my boss was terminated, I should have been next in line for the General Manager's position but was replaced by a male instead.  Robert Rehm male (my replacement) is acting General manager today due to the new General manager has resigned."  (*Id*. at Continuation Page, ¶1, ECF No. 31-1 at 9.)   In addition, Offie identified two male employees (Sam Moore, Kevin Wingard) who were drug and alcohol tested and permitted to retain their jobs, and another employee (Scott Yeager) who consumed alcohol with his staff on Hotel property and they all retained their jobs. (Discharge Quest. ¶13 & Con't Page, ¶13, ECF No. 31-1 at 5 & 9.)  Offie also listed two female employees (Denise Bell and Nicole Cheney) who were under age forty, allegedly consumed alcohol on the premises but were not discharged, and who were not required to undergo alcohol and drug testing.  (*Id*.)

On April 4, 2008, an amended complaint was filed by Offie with the PHRC ("amended PHRC complaint"), which included two counts—Count I Discharge-Sex Discrimination, and Count II Discharge-Age Discrimination.  (Am. PHRC Compl., Ex. B to Defs.' Mem., ECF No. 31-2.)  Plaintiff reiterated the allegations contained in her original PHRC Complaint, but also included several new allegations.  With regard to her claim of sex discrimination in Count I, Offie added that prior to her discharge, she was never disciplined nor notified of any performance issues (Am. PHRC Compl. ¶9, ECF No. 31-2 at 2); and that she "believed [the Radisson's] actions were due to my sex, female because Scott Yeager had made several comments about [her] ability to perform the job, such as, he feared [she] would not be able to handle an irate customer because [she] was a woman and he needed to replace [her] with Robert

to allow the business to flourish" (*id.* at ¶12). As to her claim of age discrimination, Offie added two allegations, including: "Subsequent to my discharge, I was replaced by younger employee, Robert Rehn" (*id.* at ¶18, ECF No. 31-2 at 3); and "I believe the [Radisson's] actions were due to my age, 40 because [Radisson] managers selected who they were going to administer the drug test to" (*id.* at ¶19). The amended PHRC complaint was dual-filed with the EEOC. (*Id.* at ¶22.)

On or about June 3, 2008, Radisson filed an answer to Offie's amended PHRC complaint and affirmative defenses ("Respondent's Answer"). (Pl.'s Ex. 2 to Br. in Opp'n, ECF No. 35-2.) In particular, in response to paragraph 12 of Offie's amended PHRC complaint, Radisson stated that it:

> absolutely denies all of the allegations in PARAGRAPH TWELVE of the [Amended PHRC] Complaint. Mr. Yeager specifically denies that he ever made any comments to [Offie] about her not being able to perform her job because she is a woman. Mr. Yeager supervises several successful female employees in prominent positions in each of the locations under his direction and control. Any decisions made by Mr. Yeager were based upon legitimate, non-discriminatory business reasons and not on the basis of [Offie's] sex, age, or any other protected classification.

Resp.'s Ans. ¶12 (Pl.'s Ex. 2 at 4, attached to Pl.'s Br. in Opp'n, ECF No. 35-2 at 4.) Thereafter, a fact-finding conference was held before the PHRC on June 19, 2008.[4] At that conference, Offie maintains that she offered rebuttal testimony to the Radisson's Answer to Amended PHRC Complaint and that she was urged by the PHRC to submit her rebuttal in writing. Offie complied and submitted a document to the PHRC which she titled, "My rebuttal notes submitted"

---

[4] Plaintiff submitted to the PHRC a document with the heading, "June 19, 2007, Information Gathering Hearing, Case # 200700600", which included the following parenthetical notation in the top right-hand corner of page one: "My rebuttal notes submitted/" Although Plaintiff's Rebuttal Notes indicate that the fact-finding conference occurred on 6/19/07, this appears to be a typographical error as all parties agree the fact-finding conference took place on 6/19/08.

("Rebuttal Notes").[5]   In her Rebuttal Notes, Offie sets forth additional facts to rebut

Respondent's Answer to paragraph 12 of the amended PHRC complaint:

> Scott [Yeager] did make reference to my not being able to perform my duties as a woman of my stature.  He also told me that he needed to replace me with Robert Rehm in order for the hotel to flourish.  There were numerous times when I was discredited by Scott Yeager.  I was also not permitted to attend out of town seminars which were held by Janus for all General Managers, Food and Beverage Directors and Sales staff.  Although I was more qualified, I was paid much less then male Food and Beverage Directors.  I was also promised a review and a raise after 90 days by Scott that never happened.  He also stated to me on one occasion that he could not meet with me and discuss my duties because he only met with key managers, and I was not a key manager.  These instances clearly indicate discriminatory action from the [Radisson].
>
> At these out of town seminars HELP employees were encouraged to consume alcohol as it was provided by Janus Management.

Rebuttal Notes, ¶12 (Pl.'s Ex. 1 at 2 attached to Pl.'s Br. in Opp'n, ECF No. 35-1 at 2.)

Up to this point, Offie was not represented by counsel.  Beginning in July of 2009, the

administrative record before the PHRC[6] indicates that Offie was represented by present counsel,

who contacted the PHRC to request that the PHRC complaint be amended for a second time to

include all of Plaintiff's employers as respondents.  *See* 7/20/09 Letter to Cheryl Williams (Pl.'s

Ex. 3 attached to Pl.'s Br. in Opp'n, ECF No. 35-3).  Thereafter, a second amended PHRC

---

[5] Although these facts are not alleged in her federal amended complaint, it can be inferred from the notations on the face of the Rebuttal Notes and the PHRC's procedures for conducting fact-finding conferences, *see* *PHRC* *Fact-Finding* *Conferences,* http://www.portal.state.pa.us/portal/server.pt/community/publications__faq/18983/other_publications/709208 (last visited Jan. 5, 2012) (hereinafter "*PHRC Fact-Finding Conferences*"), that Plaintiff presented the Rebuttal Notes as evidence in support of her PHRC complaints at the fact-finding conference on 6/19/08.

[6] The PHRC documents filed with this Court include excerpts from the administrative record before the PHRC which, in addition to the PHRC complaints, consist of Respondent's Answer and Plaintiff's Rebuttal Notes in response, as well as correspondence between the PHRC and Plaintiff and/or her counsel (collectively, the "PHRC documents" or "administrative record").

complaint was filed on or about October 7, 2009.[7] (Defs.' Ex. C attached to Defs.' Mem., ECF No. 31-3.) The second amended PHRC complaint differs from the previous version in only two respects: (1) in addition to the Radisson, the named respondents in the caption and in paragraph 3 include Janus Hotels, HELP, and Janus American; and (2) the Jurisdictional Statement contained in paragraph 1 has been expanded from stating that jurisdiction is pursuant to the PHRA in the former version, to now state that "[t]his agency has jurisdiction over the claims asserted in this complaint, including retaliation, constructive discharge, hostile work environment, and disparate treatment, pursuant to the Pennsylvania Human Relations Act . . . and Title VII . . .." (Second Am. PHRC Compl., caption & ¶¶1 & 3, ECF No. 31-3 at 1-2.)

The EEOC issued a right to sue letter on October 29, 2010 (ECF No. 1-1; Fed. Am. Compl., SOF ¶27, ECF No. 28 at 6), and Plaintiff timely instituted this federal action on January 13, 2011. After having requested and been granted leave to file an amended federal complaint, Plaintiff did so on June 3, 2011. (ECF No. 28.) Subsequently, Defendants filed the motion for partial dismissal of the federal amended complaint at issue here, which has been fully briefed and responded to. The Court held oral argument on Defendants' motion on October 3, 2011. Thus, the motion for partial dismissal is now ripe for disposition.

### C.    Legal Standard – Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556

---

[7] At or around the time of the filing of the second amended PHRC complaint on October 7, 2009, Ms. Fried entered her appearance on behalf of Offie with the PHRC and forwarded said complaint to the PHRC requesting it be served on Defendants. At oral argument on Defendants' motion to dismiss, however, Ms. Fried maintained that she did not assist in preparing any of the formal PHRC complaints

(2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1960 (May 18, 2009) (citing *Twombly*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal* at 1949 (citing *Twombly* at 556).  The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly* at 556-57).  The court of appeals has expounded on this standard in light of its decision in *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's recent decision in *Iqbal*:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  In light of *Iqbal*, the *Fowler* court then set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim.  First, the district court must accept all well-pleaded facts as true and discard any legal conclusions contained in the complaint.  *Fowler,* 578 F.3d at 210-11.  Next, the court must consider whether the facts alleged in the Complaint sufficiently demonstrate

---

filed by Offie.

that the plaintiff has a "plausible claim for relief." *Id*. at 211. To survive a motion to dismiss, a complaint must show an entitlement to relief through its facts. *Id*. (citing *Phillips* at 234-35).

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id*. A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).[8]

## D. Discussion

### 1. Failure to Exhaust Administrative Remedies

Defendants submit that Offie has asserted seven new causes of action for the first time in her federal amended complaint, none of which were previously asserted in any of her three PHRC complaints, nor do they grow out of the two distinct discrimination claims asserted before the PHRC. Rather, Defendants contend that the new federal claims are predicated upon facts that are unrelated and distinct from the facts asserted in Plaintiff's PHRC complaints. Thus, Defendants contend that Offie has failed to exhaust her administrative remedies with regard to

---

[8] Of particular relevance here, several district courts in this circuit have held that an EEOC charge of discrimination and other related documents (e.g., right to sue letter, intake questionnaire) are public records, and therefore, the court may consider these documents without converting the motion to dismiss into a motion for summary judgment. *Branum v. United Parcel Serv., Inc.,* 232 F.R.D. 505, 506 n. 1 (W.D.Pa. 2005) (Conti, J.) (citing *Rogan v. Giant Eagle, Inc.,* 113 F. Supp. 2d 777, 782 (W.D.Pa. 2000) (Cohill, J.); *Burkhart v. Knepper,* 310 F. Supp. 2d 734, 741-42 (W.D.Pa. 2004) (Gibson, J.); *Hercik v. Rodale, Inc.,* No. Civ.A. 03-CV-06667, 2004 WL 1175734, * 1 (E.D.Pa. May 24, 2004) (other citation omitted)); *see also Price v. Schwan's Home Serv., Inc.,* No. Civ. A. 05-220J, 2006 WL 897721, * 3 (W.D.Pa. Apr. 3, 2006) (Gibson, J.) (In deciding motion to dismiss, court could rely on PHRC complaint where defendant made it part the motion, the document was authentic, and plaintiff's claim rested upon it (citing *Steinhardt Group, Inc. v. Citicorp,* 126 F.3d 144, 145 (3d Cir. 1997))).

these claims prior to commencing the instant federal action.

It is well established that before commencing a Title VII action in federal court, a plaintiff must exhaust her administrative remedies, which is typically done by filing a charge with the EEOC and receiving a right to sue letter from the EEOC.[9] *Devine v. St. Luke's Hosp.,* 406 F. App'x 654, 656 (3d Cir. 2011) (citing 42 U.S.C. §2000e-5(e)(1); *Burgh v. Borough Council of the Borough of Montrose,* 251 F.3d 465, 470 (3d Cir. 2001)). The purpose behind the exhaustion requirement is to provide the EEOC with "notice of the plaintiff's claims and to afford it 'the opportunity to settle disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court.'" *Webb v. City of Philadelphia,* 562 F.3d 256, 262 (3d Cir. 2009) (quoting *Antol v. Perry,* 82 F.3d 1291, 1296 (3d Cir. 1996)) (other citation omitted). The exhaustion requirement also provides the defendant employer with "'notice that a complaint has been lodged against [it] and gives [it] the opportunity to take remedial action.'" *Hodge v. Trinity Indus., Inc.,* No. 2:10-cv-1219, 2011 U.S. Dist. LEXIS 11680, *7-*8 (W.D.Pa. Feb. 7, 2011) (quoting *Lawton v. Sunoco, Inc.,* Civ. A. No. 01-2784, 2002 WL 1585582, at *4-*5 (E.D.Pa. July 17, 2002)).

The federal complaint is limited to claims that are within the scope of the charge of discrimination filed with the administrative agency. *Antol,* 82 F.3d at 1296. In this regard, the court of appeals has explained: "[o]nce a charge of some sort is filed with the EEOC, . . . the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC

---

[9] Similarly, in order to bring a civil action under the PHRA, a plaintiff must first file an administrative complaint with the PHRC within 180 days of the alleged discriminatory action. 43 Pa. Stat. § 959(a) & (h); *Woodson v. Scott Paper Co.,* 109 F.3d 913, 925 (3d Cir. 1997) (citing 43 Pa. Stat. §§ 959(a), 962). Where, as in the case at bar, the plaintiff initially files her administrative complaint directly with the PHRC and requests dual-filing with the EEOC, pursuant to the work-share agreement between the PHRC & EEOC, the EEOC effectively waives its statutory right to initially process the discrimination complaint. *See Zahavi v. PNC Fin. Servs. Group, Inc.,* Civ. A. No. 07-376, 2007 U.S. Dist. LEXIS 77484, at *16-17 n. 11 (W.D.Pa. Oct. 18, 2007) (citing *Woodson,* 109 F.3d at 925-26).

investigation which can reasonably be expected to grow out of the charge of discrimination.'"

*Hicks v. ABT Assoc., Inc.,* 572 F.2d 960, 966 (3d Cir. 1978) (quoting *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398-99 (3d Cir. 1976) (other citations omitted)); *see also Antol,* 82 F.3d at 1295 (quoting *Waiters v. Parsons,* 729 F.2d 233, 237 (3d Cir. (1984)) ("The relevant test in determining whether [plaintiff] was required to exhaust her administrative remedies, therefore, is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.").  More recently, the court of appeals reiterated in *Webb*:

> While we have recognized the 'preliminary requirements for a Title VII action are to be interpreted in a nontechnical fashion," the aggrieved party "is not permitted to bypass the administrative process." *Ostapowicz*, 541 F.2d at 398. Accordingly, we have held "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 398-99.

562 F.3d at 263.  The court of appeals cautioned that without this limitation, the "charging party could greatly expand an investigation simply by alleging new and different facts when he was contacted by the EEOC following his charge."  *Hicks,* 572 F.2d at 967.  Failure to exhaust administrative remedies is not a jurisdictional defect, but rather, provides a basis for dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  *Anjelino v. New York Times Co.,* 200 F.3d 73, 87-88 (3d Cir. 2000).

The claims which Defendants contend were not exhausted before the PHRC and EEOC include:

> **In Count I** – claims of sexual harassment/hostile work environment and disparate treatment based on sex under Title VII;
>
> **In Count II** – claims of sexual harassment/hostile work environment and disparate treatment based on sex under the

PHRA;

**In Count III** – claims of age-based harassment/hostile work environment and disparate treatment under the ADEA;

**In Count IV** – claims of age-based harassment/hostile work environment and disparate treatment under the PHRA;

**All of Count VII** – claim for retaliation under Title VII; and

**All of Count VIII** – claim for retaliation under the PHRA.

Fed. Am. Compl., ECF No. 28 at 7-9. [10] Defendants advance several arguments in support which are considered below.

> a. *Whether Plaintiff's Federal Claims for Retaliation, Harassment/Hostile Work Environment, and Disparate Treatment in Wages and Work Opportunities/Conditions Fall Within the Scope of the PHRC Investigation Which Can Reasonably Be Expected to Grow Out of the Three PHRC Complaints*

Initially, Defendants argue that Plaintiff has failed to satisfy the exhaustion requirements because her claims for retaliation, harassment/hostile work environment, and disparate treatment in wages and work opportunities/conditions are not asserted anywhere in the three PHRC complaints. Defendants further argue that Plaintiff's claims of discriminatory discharge cannot later be expanded to include new and unrelated allegations of disparate treatment based upon different and distinct acts. (Defs.' Mem. at 11, ECF No. 31 at 11.)[11] While Defendants

_____

[10] Counts I through IV also contain a claim for discriminatory discharge, which is not challenged in this motion to dismiss. Also, as noted above, the federal amended complaint does not contain a count V or count VI. *See* Note 1, *supra.*

[11] In support of their argument, Defendants rely primarily on *Marshall v. FedEx Ground Package Sys., Inc.,* No. 3:09-cv-2531, 2010 U.S. Dist. LEXIS 92818 (M.D.Pa. July 13, 2010); *Rogan v. Giant Eagle, Inc.,* 113 F.Supp. 2d 777 (W.D.Pa. 2000), *aff'd mem.* 276 F.3d 579 (3d Cir. 2001); and *Zahavi, supra.* While these cases generally support the legal proposition for which they are cited, they are all factually distinguishable, in part, from the case at bar. In *Marshall* and *Zahavi,* the claims in the federal complaints or amended charges contained new allegations that were not related in any way to the claims or supporting allegations contained in the original charges of discrimination before the administrative agencies. *Marshall,* 2010 U.S. Dist. LEXIS 92818, at *18-*19; *Zahavi,* 2007 U.S. Dist. LEXIS 77484, at

acknowledge that in order to exhaust her administrative remedies as to the claims stated in her federal complaint, Plaintiff "had to assert facts in her PHRC Complaints related to harassment, retaliation and disparate treatment concerning wages and work opportunities" (Defs.' Mem. at 13, ECF No. 31 at 13), Defendants submit that the PHRC complaints do not contain any factual allegations to support such claims.

In response, Plaintiff argues that Defendants' argument misses the mark because it focuses solely on the claims and factual allegations set forth in the PHRC complaints and does not take into consideration the standard applied in this Circuit for exhausting administrative remedies which, in addition to the PHRC complaints, looks to the PHRC investigation arising from the PHRC complaints. The Court agrees with Plaintiff that the appropriate inquiry here is whether her federal claims fall within the scope of the PHRC investigation which can reasonably be expected to grow out of Plaintiff's discriminatory discharge claims filed with the PHRC. *Webb,* 562 F.3d at 263 (citing *Ostrapowicz,* 541 F.2d at 398-99).

The starting point for the Court's administrative exhaustion analysis is an examination of the complaints filed with the PHRC.[12] It appears that all three of Plaintiff's PHRC complaints identify two separate claims for discriminatory discharge based on sex and age. The original complaint prepared by the PHRC and served on the Radisson consists of a cover page, the IN-5 Form – Discharge Questionnaire ("Discharge Questionnaire") verified by Plaintiff, and a certificate of service.[13] The allegedly discriminatory treatment identified in paragraph 1 of the

---

[12] Plaintiff contends that the complaints were prepared by the PHRC based on information she provided.

[13] The Court may consider the allegations contained in the Discharge Questionnaire because it was made a part of Plaintiff's original PHRC complaint. Ordinarily, a Plaintiff may not rely on the allegations set

*33-*35. In *Rogan,* the court refused to consider allegations of retaliation that appeared only in the intake questionnaire, and not in her charge of discrimination, an issue not before this Court. *Rogan,* 113 F.Supp. 2d at 788. As explained below, Plaintiff's claims for gender-based disparate treatment for failure to promote, and age-based disparate treatment in selectively enforcing drug/alcohol testing, are related to and grow out of the same facts alleged in Plaintiff's PHRC complaints.

Discharge Questionnaire was stated as being "replaced by Robert Rehm, male" and being "discharge[d for] consuming alcohol on [hotel] property" and for "fail[ing] my drug and alcohol test conducted on 3/22/07." (Ex. A to Defs.' Mem. at ¶1, ECF No. 31-1 at 3.) Plaintiff further explained that when her boss was terminated, she was next in line for the general manager's position which he had occupied, but Plaintiff was discharged so that a male, Robert Rehm, could be placed in the general manager's position. (*Id.* at con't page - ¶1, ECF No. 31-1 at 9.) In paragraph 2 of the Discharge Questionnaire, the boxes next to "sex" and "age" were checked for purposes of identifying the reasons for the alleged discriminatory discharge. (*Id.* at ¶2.) The Discharge Questionnaire also indicates that Plaintiff's supervisor, Scott Yeager, was the decision maker who was responsible for her discharge, and that his stated reasons for her discharge were untrue and a cover-up for the real reason for eliminating Plaintiff. (*Id.* at ¶10, ECF No. 31-1 at 5.) Plaintiff also identified three male co-workers who also allegedly consumed alcohol on hotel property yet were not disciplined or discharged. (*Id.* at con't page - ¶13, ECF No. 31-1 at 9.) In addition, Plaintiff identified two co-workers (female) who were under age 40 and allegedly consumed alcohol on hotel property without repercussion. (*Id.* at ¶13 & con't page - ¶13, ECF No. 31-1 at 5 & 9.)

Similarly, in the amended and second amended PHRC complaints (Ex. B & C to Defs.' Mem., ECF Nos. 31-2 & 31-3), two claims are specifically identified: Count I, "Discharge Sex – Discrimination," and Count II, "Discharge Age - Discrimination." The amended and second amended PHRC complaints reiterate the factual allegations contained in her original complaint, plus contain the following additional allegations in support of her claim of discriminatory

forth in the intake/discharge questionnaire to show administrative exhaustion because the form is not normally shared with the employer. *Berzanty*, 361 F. App'x at 415. However, that rule does not apply here where the Discharge Questionnaire was actually incorporated into the original PHRC complaint and served on the Radisson.

discharge based on sex:

> I believe the Respondent's actions were due to my sex, female because Scott Yeager had made several comments about my ability to perform the job, such as, he feared I would not be able to handle an irate customer because I was a woman and he needed to replace me with Robert to allow the business to flourish.

(Ex. B & C, Count I, ¶12, ECF No. 31-2 at 2 & ECF No. 31-3 at 3.)   Under Count II in both the amended and second amended PHRC complaints, Plaintiff asserts additional allegations in support of her claim of discriminatory discharge based on age.  In particular, Plaintiff alleges that younger employees were not required to take an alcohol and drug test (¶17), that she was replaced by a younger employee, Robert Rehm (¶18), and that she "believe[s] the Respondent's actions were due to [her] age, 40 because respondent managers selected who they were going to administer the drug test to" (¶19).  (Ex. B & C, Count II, ¶¶17-19, ECF No. 31-2 at 3, ECF No. 31-3 at 4.)   In addition, the second amended PHRC complaint contains a single reference to claims of retaliation, hostile work environment and disparate treatment in the jurisdiction statement at the very beginning of complaint, without any supporting facts.  (Ex. C, Jurisdiction ¶1, ECF No. 31-3 at 1.)

As a preliminary matter, the Court finds that merely stating that the PHRC has jurisdiction over the claims asserted in the second amended PHRC complaint, including claims for retaliation, hostile work environment, and disparate treatment, does not prove that Plaintiff exhausted her administrative remedies as to those claims,[14] for two reasons. First, given Attorney

---

[14]   After her discrimination charge was already pending for over two years, Plaintiff's counsel corresponded with the PHRC on 10/02/09 enclosing a second amended complaint which she requested be served on the named respondents.  Significantly, Attorney Fried stated in this correspondence that the only changes in that complaint were "the names of the Respondents who are and were the joint employers of [Plaintiff] when she worked at the Radisson . . .." (Ex. D, ECF No. 31-4.)  However, at oral argument, Attorney Fried attempted to argue that the reference to a retaliation claim in the Jurisdiction section of the second amended PHRC complaint was sufficient to provide notice of such claim and meet the exhaustion requirement.

Fried's representation to the PHRC on 10/02/09 that the second amended PHRC complaint contained no changes other than the change to the named respondents, it would not be reasonable to conclude, *based solely on the statement of jurisdiction*, that the scope of the PHRC investigation would have included claims for retaliation, harassment/hostile work environment or disparate treatment. Second, the jurisdiction statement refers to the "claims asserted in this complaint," thus indicating that an examination of the substance of the allegations is required. Indeed, courts have generally required that the facts supporting discrimination be set forth in the narrative section of the EEOC/PHRC complaint in order to put the respondent on notice of the charges against it. *See, e.g., Yang v. AstraZeneca,* Civ. A. No. 04-4626, 2005 U.S. Dist. LEXIS 1825, *9 (E.D.Pa. Feb. 10, 2005) (even if boxes for race, national origin, or gender discrimination had been checked, without supporting allegations in the narrative section of the charge, charge was still insufficient to establish those claims (citing *Johnson v. Chase Home Fin.,* 309 F.Supp. 2d 667, 672 (E.D.Pa. 2004)); *cf. Zahavi v. The PNC Fin. Servs. Group. Inc.,* Civ. A. No. 07-376, 2007 U.S. Dist. LEXIS 77484, at *25 (W.D.Pa. Oct. 18, 2007) (in determining whether allegations in an amended charge are reasonably related to and grow out of the original charge, the ""crucial element of the charge of discrimination is the factual statement contained therein'" (quoting *Bernstein v. Nat'l Liberty Int'l Corp.,* 407 F.Supp. 709, 712-13 (E.D.Pa. 1976)). Thus, the Court turns to the claims and supporting factual allegations set forth in the PHRC complaints to determine whether the scope of the PHRC's investigation could reasonably be expected to include claims for retaliation, gender and age-based harassment/hostile work environment, and gender and age-based disparate treatment.

It is clear from the face of the PHRC complaints that none of them specifically identifies separate claims for retaliation, harassment/hostile work environment, or disparate treatment. The

only two claims specifically identified are "Discharge – Sex Discrimination" and "Discharge – Age Discrimination." In addition, the supporting allegations set forth in the Discharge Questionnaire, specifically, the continuation page (Plaintiff was next in line for the general manager's position but was discharged so a male could be placed in that position), and paragraph 12 of the amended and second amended PHRC complaints (referring to "several comments [by Yeager] about [Plaintiff's] ability to perform the job" and Yeager's purported statement that he "feared [Plaintiff] would not be able to handle an irate customer because [she] was a woman"), while providing a reasonable basis to expect that the scope of the PHRC's investigation that grew out of Plaintiff's complaints would include a claim for gender-based disparate treatment for failure to promote and discriminatory discharge, do not support a claim for sexual harassment/hostile work environment.

"Ordinarily, a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination." *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497, 503 (7th Cir. 1994) (citing *Nicol v. Imagematrix, Inc.,* 767 F.Supp. 744, 752-54 (E.D.Va. 1991); *Torriero v. Olin Corp.,* 684 F.Supp. 1165, 1170 (S.D.N.Y. 1988)) (other citation omitted). The EEOC provides the following definition of sexual harassment:

> Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

29 C.F.R. § 1604.11(a); *see also PHRC Guidelines on Sexual Harassment,* part (a), 11 Pa. Bull.

522 (Jan. 31, 1981).[15]   None of the conduct alleged in the PHRC complaints comes close to suggesting that Plaintiff was sexually harassed by Yeager or, for that matter, any other employee of Defendants.

Nor do any of the allegations in the PHRC complaints support a claim for gender-based hostile work environment.  In order to state a claim for hostile work environment based upon gender, Plaintiff must establish the following five elements: (1) she suffered intentional discrimination because of her gender; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her (subjective test); (4) the discrimination would detrimentally affect a reasonable person of the same gender in her position (objective test); and (5) the existence of respondeat superior liability.  *See Abramson v. William Patterson College of New Jersey,* 260 F.3d 265, 276-77 (3d Cir. 2001) (citations omitted); *Weston v. Pennsylvania,* 251 F.3d 420, 426 (3d Cir. 2001) (citing *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir. 1990)).  In determining whether the Plaintiff has established the *prima facie* elements of a hostile work environment claim, the Court is required to evaluate the whole record.  *See Cardenas v. Massey,* 269 F.3d 251, 261 (3d Cir. 2001) (citing *Durham Life Ins. Co. V. Evans,* 166 F.3d 139, 149 (3d Cir. 1999); *Harris v. Forklift Sys., Inc.,* 510 U.S. at 23).  In so doing, courts have an obligation to be "increasingly vigilant against subtle forms of discrimination" and therefore must allow plaintiffs to prove discrimination indirectly by looking at all of the conduct, including facially neutral behavior, in determining whether plaintiffs have met their burden of proof.  *Id.* at 261 (citing *Durham,* 166 F.3d at 143; *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1081-84 (3d Cir. 1996)).

Plaintiff claims that despite the labeling "Discharge/Sex Discrimination," the allegations

---

[15] The PHRC adopted its guidelines on sexual harassment based on those promulgated by the EEOC. *PHRC Guidelines on Sexual Harassment*, 11 Pa. Bull. 522 (Jan. 31, 1981).  The PHRC's definition of

in paragraph 12 of the first and second amended PHRC complaints are unrelated to her discharge, and support a harassment/hostile work environment claim. In addition, Plaintiff submits that these allegations mirror her pro se rebuttal, in which she asserted that Yeager made reference to her not being able to perform her duties as a women of her stature, that he needed to replace her with Rhem (male) in order for the hotel to flourish, and that Yeager discredited her numerous times. Based on all of these allegations, Plaintiff maintains that any reasonable investigation would have uncovered the numerous times Yeager discredited Offie and thus would have uncovered her harassment/hostile work environment claim. There are several infirmities with Plaintiff's argument.

First, the allegations in support of her "Discharge/Sex Discrimination" claim in the amended and second amended PHRC complaints do not support a hostile work environment claim. Like *Barzanty v. Verizon PA, Inc.,* 361 F. App'x 411 (3d Cir. 2010),[16] upon which Defendants rely, here the PHRC complaints allege discrete acts of gender-based discrimination, i.e., discriminatory discharge and possibly a failure to promote. These discrete acts hardly rise to the level of "intimidating, hostile, or offensive [conduct], with discriminatory intimidation, ridicule, and insult permeating the workplace" required to prove hostile work environment. *Adeniji v. Administration for Children Services, NYC,* 43 F.Supp.2d 407, 422 (S.D.N.Y. 1999) (citing *Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 768 (2d Cir. 1998)). Similarly, when the Court takes into consideration the supporting allegations in paragraph 12 of the amended

---

sexual harassment is identical to the one quoted above from the EEOC regulation.

[16] In *Barzanty,* plaintiff alleged claims for gender discrimination and hostile work environment in her federal complaint, but only raised gender discrimination before the EEOC. The court of appeals found that the hostile work environment claim was not within the scope of the EEOC charge because the two claims related to separate occurrences—the gender discrimination claim involved the discrete act of terminating plaintiff's employment, while the hostile work environment claim involved continuing occurrences unrelated to the employee's discharge. Because the facts underlying each claim were separate, the court of appeals concluded that the hostile work environment claim had not been exhausted.

PHRC complaints (referring to "several comments [by Yeager] about [Plaintiff's] ability to perform the job" and Yeager's purported statement that he "feared [Plaintiff] would not be able to handle an irate customer because [she] was a woman"), in light of the whole record, these allegations hardly rise to the level of "intimidating, hostile, or offensive [conduct], with discriminatory intimidation, ridicule, and insult permeating the workplace" required to prove a hostile work environment. *Adeniji,* 43 F.Supp. 2d at 768; *Barbosa,* 2003 WL 22238984, at *4. More importantly, they do not put Defendants on notice of an allegation of a hostile work environment.

Second, noticeably absent from the PHRC complaints and the Rebuttal Notes are any allegations of when the alleged discriminatory acts occurred, making it impossible to infer that the frequency and duration was sufficient to constitute regular and pervasive discrimination.[17]

The final infirmity with Plaintiff's argument is that she incorrectly concludes that the allegations in the PHRC complaints mirror her pro se rebuttal. Plaintiff has it backwards—her pro se rebuttal should mirror her PHRC complaints, not vice versa. When the appropriate comparison is made, it is clear that her pro se rebuttal does not mirror her amended PHRC complaint, but rather, adds new claims and facts not previously raised. As explained below, it is not reasonable to expect that the scope of the PHRC's investigation would include the new claims and supporting allegations raised for the first time in the Rebuttal Notes.

With regard to Plaintiff's gender-based claims for disparate treatment in wages and work conditions, the Court does not find any facts set forth in the narrative section of her PHRC complaints to support such claims. Consequently, based on the allegations in the three PHRC complaints, it would not be reasonable to expect that the PHRC's investigation would include

---

361 F. App'x at 414.

[17] This infirmity also raises a statute of limitations issue, as noted by Defendants in their reply brief.

gender-based claims for disparate treatment in wages or work conditions.

On the other hand, Plaintiff's supporting allegations in her original PHRC complaint suggest disparate treatment in promotion opportunities based on the allegation that she was next in line for the general manager's position but that it was given to a male when she was discharged for false reasons in order to bypass her for the position. This could certainly be construed as a denial of promotion based on gender which, if proven, would constitute an adverse employment action.[18] Thus, the Court finds Plaintiff's claim for gender-based disparate treatment for failure to promote falls within the scope of the PHRC's investigation that can reasonably be expected to grow out of Plaintiff's discriminatory discharge claims filed with the PHRC.[19]

Next, the Court considers the allegations set forth in support of her "Discharge Age – Discrimination" claim. Paragraphs 17 through 19 of the amended and second amended PHRC complaints do not suggest that the scope of the PHRC investigation would have included a claim for age-based harassment/hostile work environment. Rather, the complaints describe two

---

However, in light of the Court's recommendation, it need not reach the statute of limitations issue.

[18] The Third Circuit has defined an adverse employment action as "an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Storey v. Burns Int'l Security Servs.,* 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey,* 269 F.3d 251, 263 (3d Cir. 2001)); *Caver v. City of Trenton,* 420 F.3d 243, 256 (3d Cir. 2005) (quoting *Nelson v. Upsala Coll.,* 51 F.3d 383, 388 n. 6 (3d Cir. 1995)) ("'[A]n adverse employment action involves some harm to an employee's employment opportunities.'"); *Burlington Ind., Inc. v. Ellerth,* 524 U.S. 742, 749 (1998) (a tangible employment action is defined as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits."). "Although direct economic harm is an important indicator of a tangible adverse employment action, it is not the sine qua non. If an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir.1999) (citation omitted).

[19] Since a failure to promote claim would appear to have arisen shortly before or at the same time as Plaintiff's discharge on 3/27/07, there does not appear to be a statute of limitations issue on this claim. However, once the exact dates are flushed out in discovery, Defendants may raise a statute of limitations argument in a summary judgment motion if the discovered facts support it.

discrete acts of purported age-based discrimination which allegedly led to her discharge: (1) Plaintiff consumed alcohol on hotel property allegedly in violation of company policy, while younger employees who consumed alcohol while on duty were not discharged, and (2) Plaintiff, age 40, was subjected to drug and alcohol testing, but younger employees were not. In addition, after her discharge, Plaintiff was allegedly replaced by a younger employee. Assuming for argument's sake that these incidents are considered acts of age-based discrimination, they hardly rise to the level of "intimidating, hostile, or offensive [conduct], with discriminatory intimidation, ridicule, and insult permeating the workplace." *Adeniji*, 43 F.Supp.2d at 422; *Barbosa*, 2003 WL 22238984, at *4. Consequently, the Court finds that based on these allegations, the PHRC would not have any reason to investigate a claim of harassment/hostile work environment based on age.

Likewise, the allegations set forth in paragraphs 17 through 19 of her amended PHRC complaints do not suggest that the scope of the PHRC investigation would have included claims for disparate treatment based on age with respect to wages or work opportunities. Neither the allegations in the PHRC complaints nor any of the other documents in the administrative record contains any evidence to support such claims. Therefore, it is not reasonable to expect that the scope of the PHRC investigation that grew out of Plaintiff's discriminatory discharge claims included claims for age-based disparate treatment in wages or work opportunities.

On the other hand, the Court does find that Plaintiff's claim for age-based disparate treatment for selective enforcement of drug/alcohol testing falls within the scope of the PHRC's investigation that can reasonably be expected to grow out of Plaintiff's discriminatory discharge claims filed with the PHRC. The PHRC complaints contain allegations that older employees were being singled out for drug and alcohol testing while younger employees were not subjected

to such testing. Since negative results on a drug or alcohol test could result in disciplinary action, up to and including discharge, the decision to selectively enforce the testing policy based on age may constitute an adverse employment action.[20]

Finally, as to Plaintiff's federal retaliation claims, Plaintiff fails to set forth in her three PHRC complaints any facts, events or acts that would support a retaliation claim.[21]  Moreover, the mere reference to retaliation solely in the jurisdiction section of the second amended PHRC complaint does not suffice to satisfy the exhaustion requirement, where the formal complaint is devoid of any factual allegations that would have led the administrative agency to investigate a retaliation claim.  *See* Discussion *supra* at 17-18 & cases cited therein; s*ee also Morales v. PNC Bank, N.A.,* Civ. A. No. 10-1368, 2011 WL 3425644, at *10 (E.D.Pa. Aug. 4, 2011) (citing *McCutchen v. Sunoco, Inc*., No. CIV. A. 01–2788, 2002 WL 1896586, at *3 (E.D.Pa. Aug. 16, 2002) ("a plaintiff that checks off a box for a particular type of discrimination on a Charge form, but then leaves the form bereft of any allusion to allegations of such discrimination cannot be deemed to have exhausted that claim.").  Indeed, an examination of Plaintiff's second amended PHRC complaint reveals neither a separate count entitled "retaliation," nor any factual allegations to suggest that she engaged in a protected activity or that she suffered an adverse employment action as a consequence of such protected activity. In addition, Attorney Fried's letter to Cheryl Williams at the PHRC dated 10/2/09 expressly states that the only changes contained in the second amended PHRC complaint "are the names of the Respondents who are

---

[20] *See* Note 18, *supra*.  Also, since the drug/alcohol testing here appears to have occurred shortly before Plaintiff's discharge on 3/27/07, there does not appear to be a statute of limitations issue on this claim. However, once the exact dates are flushed out in discovery, Defendants may raise a statute of limitations argument in a summary judgment motion if the discovered facts support it.

[21] The prima facie elements of a retaliation claim are (1) plaintiff engaged in a protected activity under Title VII, (2) the employer took an adverse employment action against her, and (3) a causal connection exists between  the protected activity and the adverse employment action.  *Nelson v. Upsala Coll.,* 51 F.3d 383, 386 (3d Cir. 1995); *Woodson v. Scott Paper Co.,* 109 F.3d 913, 920 (3d Cir. 1997).

and were the joint employers of Cynthia L. Offie when she worked at the Radisson Hotel in Sharon, PA." (Ex. D to Defs.' Mem., ECF No. 31-4.) Accordingly, the Court finds that it would not be reasonable to expect that the scope of the PHRC's investigation included a retaliation claim, based on the allegations set forth in the PHRC complaints.[22]

### b. Whether Rebuttal Notes Can Be Considered in Determining Whether Plaintiff Exhausted her Administrative Remedies

Plaintiff attempts to avoid dismissal of her claims for retaliation, harassment/hostile work environment and disparate treatment by relying on factual allegations contained in her Rebuttal Notes to show she has exhausted her administrative remedies as to these claims. Defendants object to any consideration of the Rebuttal Notes for purposes of determining whether Plaintiff has exhausted her administrative remedies. Initially, Defendants argue that Plaintiff's Rebuttal Notes, which they refer to as a "rebuttal letter," "submitted years after the filing of her Original and Amended PHRC Complaints[,] cannot serve to enlarge her federal claims." Defendants contend that the issue of whether additional documents, such as a rebuttal letter, submitted to an administrative agency after the filing of the administrative charge can be included in the charge for purposes of exhaustion of administrative remedies, has yet to be directly addressed by either the United States Court of Appeals for the Third Circuit or the district courts in this circuit.

---

[22] Plaintiff also submits that since the second amended PHRC complaint was filed after the fact-finding conference and submission of her Rebuttal Notes, and the statement of jurisdiction refers to claims for retaliation, harassment/hostile work environment, and disparate treatment, that somehow shows the PHRC's investigation included those claims. The Court disagrees. The factual assertions contained in the second amended PHRC complaint belie this conclusion, as that complaint does not contain any factual allegations to support claims for retaliation, harassment/hostile work environment, or disparate treatment in wages and work conditions/opportunities (other than failure to promote and selective enforcement of drug/alcohol testing). This is most likely because the Rebuttal Notes themselves do not contain any factual allegations to support claims for harassment/hostile work environment or retaliation. Moreover, it is unclear exactly who prepared the second amended PHRC complaint—the PHRC, Plaintiff or her counsel. Although Plaintiff maintains the PHRC prepared all of the complaints before that agency, the 10/02/09 letter from Plaintiff's counsel suggests that she had some hand in preparing the second amended PHRC complaint. *See* Note 14, *supra.*

(Defs.' Mem. at 14, ECF No. 31 at 14.)  Nonetheless, based on *Zahavi* and *Hicks,* Defendants urge this Court to answer that question in the negative.  In further support of their argument, Defendants rely on several cases from outside this circuit.  *See, e.g., Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62 (2d Cir. 2001); *Barnes v. Rite-Aid,* Civ. A. No. 09-6629 §B(4), 2010 U.S. Dist. LEXIS 114876 (E.D.La. Oct. 27, 2010); *Boudreaux v. St. Charles Mosquito Control, Inc.,* Civ. A. No. 09-7789 §B(4),  2010 U.S. Dist. LEXIS 72109 (E.D.La. July 19, 2010).[23]

As a preliminary matter, the Court finds Defendants' representation that Plaintiff's "rebuttal letter" was submitted *years* after her original and amended PHRC complaints were filed to be disingenuous.   In actuality, the Rebuttal Notes were submitted approximately 10 ½ months after she filed her original PHRC complaint, and only 2½ months after she filed her first amended PHRC complaint.   Moreover, the Rebuttal Notes are not a "letter" as Defendants suggest, but rather, consist of numbered paragraphs which appear to correspond to the numbered paragraphs of Respondent's Answer, and were submitted just 16 days after Respondent filed its answer to the first amended PHRC complaint.[24]

Turning to the substance of Defendants' argument, it appears that some support exists in decisions by our sister courts in this circuit for considering documents other than the charge in determining the scope of the PHRC's investigation.  *See e.g., Morales,* 2011 WL 3425644, at *8 & *11 (relying, in part, on correspondence from EEOC regarding its investigation in concluding claimant's retaliation claims were within scope of the charge of discrimination, but that her "religious discrimination claim was not fairly within the scope of the prior EEOC complaint or the investigation arising therefrom.");  *Rogan v. Giant Eagle,* 113 F.Supp. 2d 777, 788 (W.D.Pa.

---

[23] These cases are all distinguishable factually and thus are inapposite to the case at bar.

[24] The certificate of service attached to Respondent's Answer indicates that a copy of the Answer was served on Plaintiff on June 3, 2008  (Ex. 2 attached to Pl.'s Opp'n Br. at 10, ECF No. 35-2 at 10), and the Rebuttal Notes are dated June 19, 2008.

2000) (court considered letter from EEOC summarizing evidence it obtained during its investigation of plaintiff's allegations to confirm that EEOC only addressed claim for failure to promote under ADA).[25]   Indeed, Defendants themselves ask this Court to consider the 1/16/08 letter from the PHRC in an attempt to show the scope of the PHRC's investigation.[26]

In addition, the notations on the front of the Rebuttal notes suggest that this document was submitted at the fact-finding conference on 6/19/08 as part of the PHRC's investigatory process.  Specifically, the face of the Rebuttal Notes contains the date, the PHRC case number, and the notations, "Information Gathering Hearing" and "my rebuttal notes submitted."  As stated on its website, the PHRC allows complainants to submit evidence in support of their positions at the fact-finding conference.[27]   The PHRC uses the fact-finding conference as an investigative tool to collect evidence from the parties in support of their positions to assist in the facilitation of a voluntary settlement or to issue a finding regarding probable cause.  *See PHRC Fact-Finding Conferences, supra.*  Thus, based on these notations and the procedures outlined on the PHRC's website, it would appear that as part of its investigation, the PHRC considered

---

[25] Plaintiff submits that decisions from judges in this District support consideration of the Rebuttal Notes, citing *Branum*, 232 F.R.D. at 506 n.1 (Conti, J.); *Zahavi*, 2007 U.S. Dist. LEXIS 77484, at *8-*9 n.7 (Lenihan, M.J.).  However, neither case supports Plaintiff's argument, as she misconstrues the holdings in those cases.  The judges were opining as to the scope of documents that could be considered without converting a motion to dismiss to a motion for summary judgment, and were not faced with the specific question raised here.  Plaintiff's reliance on *Antol* is similarly misplaced as that case was before the court on a summary judgment motion and the document at issue was an affidavit, which is routinely considered at the summary judgment stage and, indeed, Federal Rule of Civil Procedure 56(c)(1) specifically identifies affidavits as one of the acceptable documents to support a factual position.

[26] Defendants attempt to argue that a letter from the PHRC dated January 16, 2008 sent to Plaintiff confirms that the PHRC's investigation was limited to claims for discriminatory discharge based on sex and age.  The Court does not agree with Defendants' interpretation of the 1/16/08 letter.  In that letter, the PHRC does not appear to be defining the scope of its investigation, but rather, appears to be setting forth the starting point for its investigation, as the representative of the PHRC specifically enunciates what actions Plaintiff must take "[i]n order for the Commission to *proceed with its investigation*."  (Defs.' Ex. F attached to Defs.' Mem., ECF No. 31-6.)

[27] At the fact-finding conference, the PHRC fact-finder conducts a face to face meeting between the parties to allow each side "to present evidence supporting their positions, reply to the other party's position and possibly consider a voluntary settlement of the complaint."  *PHRC Fact-Finding*

Plaintiff's Rebuttal Notes as evidence in support of her position. Therefore, since the PHRC considered the Rebuttal Notes during its investigation of Plaintiff's PHRC complaints, the Court is not precluded from considering the Rebuttal Notes in determining the scope of that investigation.

The Court cautions, however, that just because the Rebuttal Notes were considered by the PHRC in its investigation, that does not necessarily lead to the conclusion that all of the alleged discriminatory acts raised in the Rebuttal Notes fall within the scope of the PHRC's investigation, for the test, as enunciated by the Third Circuit in *Webb,* limits the claims that may be brought in federal court to those that fall within the scope of the PHRC's investigation which can reasonably be expected to grow out of *Plaintiff's administrative complaints*. Thus, to the extent the Rebuttal Notes contain newly raised allegations of discriminatory acts that are not related to or do not grow out of Plaintiff's discriminatory discharge claims and supporting allegations, it would be unreasonable to expect that the scope of the PHRC's investigation would include such acts or claims arising therefrom.

After reviewing Plaintiff's PHRC complaints and the allegations in the Rebuttal Notes, the Court finds that it would be unreasonable to expect that the scope of the PHRC's investigation included every claim or discrete act asserted in the Rebuttal Notes. To hold otherwise would allow Plaintiff to circumvent the PHRC's regulations for filing and amending claims. 16 Pa. Code §§ 42.31-42.32, 42.35. Plaintiff newly alleges in her Rebuttal Notes that she was discredited by Yeager on several occasions and goes on to provide several examples—withholding permission for Plaintiff to attend out of town seminars; being paid less than her male counterparts despite being more qualified; failing to follow through with a promised review and raise after 90 days; refusing to meet with Plaintiff and discuss her duties because she was not a

---

*Conferences, supra.*

key manager. Rebuttal Notes, ¶12 (Pl.'s Ex. 1 at 2 attached to Pl.'s Br. in Opp'n, ECF No. 35-1 at 2.) However, none of these discrete acts is related to or grows out of Plaintiff's discriminatory discharge claims, gender-based failure to promote claim, or claim for age-based disparate treatment in selective enforcement of drug/alcohol testing, as stated in her PHRC complaints. Therefore, the Court would not expect the PHRC's investigation to include claims for gender and age based harassment/hostile work environment, gender and age based disparate treatment in wages, gender based disparate treatment in work conditions, or age based disparate treatment in work opportunities.

As to Plaintiff's retaliation claims, consideration of the Rebuttal Notes does not help Plaintiff because the Rebuttal Notes do not contain any allegations suggesting retaliation. Therefore, lacking any factual predicate for retaliation, the Rebuttal Notes simply do not enlarge the claims Plaintiff may bring in federal court vis a vis retaliation.[28] Thus, this Court's conclusion that Plaintiff failed to exhaust her administrative remedies as to her claims for retaliation under Title VII and the PHRA, is not changed by the Rebuttal Notes.

The Court further notes that the Rebuttal Notes do not enlarge the federal claims Plaintiff may bring vis a vis gender-based disparate treatment in failure to promote and age-based disparate treatment in selective enforcement of drug/alcohol testing. As this Court has found above, the PHRC complaints contain factual allegations to support these disparate treatment claims, and thus, it is reasonable to expect that the scope of the PHRC's investigation would include claims for gender-based disparate treatment in failure to promote and age-based disparate treatment in selective enforcement of drug/alcohol testing.

Defendants argue in the alternative that the allegations set forth in the Rebuttal Notes

---

[28] In addition, the Rebuttal Notes do not add any new factual allegations vis a vis Plaintiff's claim for age-based disparate treatment/discharge that are not already contained in her original and amended PHRC

cannot be incorporated into the charge of discrimination unless the Rebuttal Notes are considered an amendment to the charge, i.e., the allegations in the amending document must be reasonably related to or grow out of the original allegations in the charge.[29]  The Court agrees that Plaintiff cannot rely on the Rebuttal Notes to raise new discrete acts of discrimination unrelated to the claims she previously asserted in her PHRC complaints in order to satisfy the exhaustion requirements.  Moreover, it is unlikely the PHRC would have deemed the Rebuttal Notes as an amendment to her previously filed PHRC complaints, as an amendment is limited to allegations "which are related to or grow out of the subject matter of the original complaint."  16 Pa. Code §42.35(b).  Here, it is clear that the new allegations in the Rebuttal Notes are not reasonably related to or grow out of the subject matter in Plaintiff's PHRC complaints.  In addition, there is simply no evidence that the PHRC treated the Rebuttal Notes as an amendment to the charge. Indeed, the fact that Plaintiff subsequently filed a second amended PHRC complaint which did not include the new factual allegations raised in the Rebuttal Notes confirms this conclusion.

To summarize, Plaintiff's claims for retaliation, harassment/hostile work environment based on sex and age, gender-based disparate treatment in wages and work conditions, and age-based disparate treatment in wages and work opportunities, are predicated on new and distinct

---

complaints.

[29] The pertinent PHRC regulation provides:

> The complaint may be amended to cure technical defects or omissions, to clarify or amplify allegations made therein, or to add material allegations which are related to or grow out of the subject matter of the original complaint, and these amendments shall relate back to the original filing date of the complaint.

16 Pa. Code §42.35(b).  The EEOC regulations set forth similar requirement for EEOC charges alleging violations of Title VII and the ADEA.  *See* 29 C.F.R. 29 C.F.R. §§1601.12(b) & 1626.8(c).

acts not previously asserted in the PHRC complaints. Thus, as to these claims, it appears that Plaintiff has failed to exhaust her administrative remedies. Therefore, the Court recommends that these claims be dismissed with prejudice. On the other hand, the PHRC complaints do contain allegations to suggest claims for gender-based disparate treatment relating to failure to promote and age-based disparate treatment regarding selective enforcement of drug/alcohol testing. Therefore, the Court finds these disparate treatment claims have been administratively exhausted. Accordingly, the Court recommends that Defendants' motion to dismiss be denied as to Plaintiff's claims for gender-based disparate treatment relating to failure to promote and age-based disparate treatment regarding selective enforcement of drug/alcohol testing.

### 2. Whether Plaintiff Failed to State a Claim for Age-Based Harassment/Hostile Work Environment or Age-Based Disparate Treatment in Wages or Work Opportunities

As the Court has determined that Plaintiff has not exhausted her administrative remedies with regard to her claims for age-based harassment/hostile work environment and age-based disparate treatment in wages or work opportunities, the Court need not and will not reach Defendants' argument that Plaintiff has failed to state a claim under Rule 12(b)(6) as to these claims.

### 3. Whether Plaintiff Failed to State a Claim for Gender-Based Harassment/Hostile Work Environment

In the alternative, Defendants challenge the adequacy of Plaintiff's factual allegations of harassment/hostile work environment, and thus, request dismissal of Plaintiff's gender-based harassment/hostile work environment claim for failure to state a claim under Rule 12(b)(6). As the Court has determined that Plaintiff has not exhausted her administrative remedies with regard to her claim for sexual harassment/hostile work environment, the Court need not and will not reach Defendants' argument that Plaintiff has failed to state a claim under Rule 12(b)(6) as to

this claim.

4. **Whether Plaintiff Has Pled Sufficient Facts to Suggest**
   **That Yeager's Alleged Actions Constituted an Adverse**
   **Employment Action to Support Claims for Gender-Based**
   **Disparate Treatment in Work Conditions**

Next Defendants argue that Offie has failed to plead sufficient facts to suggest that any of Yeager's alleged actions constituted an adverse employment action. According to Defendants, an adverse employment action is more disruptive than a mere inconvenience or an alteration of job responsibilities, but rather, entails a materially significant disadvantage with respect to the terms of employment, such as hiring, firing, failing to promote, termination or demotion. Defendants submit that none of the following alleged acts rises to the level of an adverse employment action: (1) Yeager undermined or removed Offie's authority to discharge or discipline the employees she supervised; (2) Yeager refused to give Offie check signing authority when general manager was absent; (3) Yeager reversed Offie's decision in July 2006 to remove an unruly customer from the hotel; and (4) Yeager withheld permission for Offie to attend out of town training seminars. Federal Am. Compl., SOF, ¶¶ 5c, 5d, 5e & 5f. Because the Court has concluded that any claims for disparate treatment based on these four acts have not been administratively exhausted, the Court need not and will not reach Defendants' alternative argument that these acts do not constitute adverse employment actions.

5. **Failure to State a Claim of Co-Employer Liability**
   **Against Janus Hotels, HELP or Janus American**

Defendants also argue Plaintiff's allegations of co-employer liability fail to assert sufficient facts to establish such liability as to Defendants Janus Hotels, Janus American, and HELP, and therefore, the claims against them must be dismissed in their entirety. Defendants' argument lacks merit. In her Amended Complaint, Plaintiff asserts that she was hired by the

Radisson in 1999, and that in 2005, the Radisson hired Janus to manage the hotel, and that she received correspondence from both Janus Hotels and Janus American from November of 2005 to March 27, 2007. Based on these factual allegations, Plaintiff concludes that Janus was her co-employer from November of 2005 until March 27, 2007. At this stage of the litigation, giving Plaintiff the benefit of all reasonable inferences, the Court finds that these allegations are sufficient to establish a plausible claim against Janus Hotels and Janus American, or, at the very least, raise issues of fact which cannot be resolved on a motion to dismiss.

In addition, Plaintiff asserts in her federal Amended Complaint, albeit in conclusory fashion, that HELP was her co-employer during that same time period. Although generally, conclusory statements are discarded in deciding a motion to dismiss, Plaintiff's conclusion appears to have been established by Defendants' own admission. Defendants admitted that HELP was Offie's employer, both before the PHRC and this Court. Defendant Radisson admitted in its response to Plaintiff's amended PHRC complaint that Plaintiff was employed by HELP. (Resp.'s Ans., ¶4, Ex. 2 to Pl.'s Br. in Opp'n, ECF No. 35-2.) Defendants also state in their supporting memorandum of law filed with this Court that "[i]n March of 2007, HELP employed Offie as the Food and Beverage Manager at the Radisson. Her last date of work with HELP was March 27, 2007." (Defs.' Mem. at 3, ECF No. 31 at 3.) Thus, the Court finds no merit to Defendants' argument that Plaintiff has failed to allege facts to establish that HELP was her employer. Accordingly, the Court recommends that Defendants' motion to dismiss Janus Hotels, Janus American, and HELP from this lawsuit be denied.

## 6.      **Motion to Strike**

In the event the Court recommends granting their motion to dismiss, Defendants request that the allegations in the Amended Complaint, Statement of Facts, Paragraphs 4 through 9 and

26 (ECF No. 28 at 3-4, 6), be stricken pursuant to Rule 12(f) on the basis that those allegations are irrelevant to the remaining claims and will result in prejudice to Defendants.

Federal Rule of Civil Procedure 12(f) provides, in relevant part, that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." To succeed, the moving party bears the burden of establishing that "'the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or [that] the allegations confuse the issues.'" *Delacruz v. Piccari Press,* 521 F.Supp. 2d 424, 428-29 (E.D.Pa. 2007) (quoting *River Rd. Dev. Corp. v. Carlson Corp. – N.E.,* No. 89-7037, 1990 WL 69085, at *3 (E.D.Pa. May 23, 1990) (citing 5 Civil C. Wright & A. Miller, *Federal Practice & Proc.,* §1382, at 809-10, 815 (1969))). In deciding a motion to strike, courts look to the pleadings alone. *Id.* at 429 (citing *North Penn Transfer, Inc. v. Victaulic Co. of Am.,* 859 F. Supp. 154, 159 (E.D.Pa. 1994)).

Generally, motions to strike are disfavored, even though they may save time and resources by eliminating the need to litigate claims that will not affect the outcome of the case. *Id.* at 428 (citing *North Penn Transfer,* 859 F. Supp. at 158). "Indeed, striking a pleading 'is a drastic remedy to be resorted to only when required for the purposes of justice' and should be used 'sparingly.' The Court has 'considerable discretion' in disposing of a motion to strike under Rule 12(f)." *Delacruz,* 521 F.Supp. 2d at 428 (citing *North Penn Transfer,* 859 F.Supp. at 158).

As noted above, Plaintiff did not exhaust her administrative remedies with regard to her claims for retaliation, harassment/hostile work environment based on age and gender, disparate treatment based on age with regard to wages, and disparate treatment based on gender with regard to wages and work conditions. As the allegations set forth in paragraphs 5a, 5b, 6, and 7

relate exclusively to these unexhausted claims, allowing these allegations to remain may prejudice the Defendants by allowing the jury to consider unexhausted claims that the Court has recommended be dismissed. *See Walker v. St. Joseph's/Candler Health Sys., Inc.,* Civ. A. No. 4:10-cv-216, 2010 U.S. Dist. LEXIS 134944, at *7-*8 (S.D.Ga. Dec. 21, 2010) (striking reference to an unexhausted charge of discrimination which included hostile work environment claim because jury may be encouraged to punish defendant for a claim plaintiff was not allowed to bring, thus resulting in prejudice to defendant). Accordingly, the Court recommends that the motion to strike be granted as to the federal amended complaint, SOF paragraphs 5a, 5b, 6 and 7. In addition, the reference to "hostile work environment" in SOF paragraph 26 does not relate in any way to her exhausted claims and that portion of paragraph 26 should be stricken.

On the other hand, the allegations set forth in the federal amended complaint, SOF paragraphs 4, 5c, 5d, 5e, 5f, 8, and 9 of the federal amended complaint do appear to have some relationship to her exhausted claims. The allegation in SOF paragraph 4 is relevant to showing Plaintiff's damages. The allegations in SOF paragraphs 5c, 5d, 5f and 8 may be relevant to show discriminatory animus with regard to Plaintiff's discriminatory discharge claim. Similarly, the allegations in SOF paragraphs 5e and 9 may be relevant to establishing a discriminatory animus and/or pretext and relate to allegations previously raised in the PHRC complaints. Therefore, like the defendants in *Delacruz,* Defendants here have failed to demonstrate that the allegations in SOF paragraphs 4, 5c, 5d, 5e, 5f, 8 and 9 have no possible relation to the controversy. *Delacruz,* 521 F.Supp. 2d at 434. Thus, the Court recommends that the motion to strike be denied as to the federal amended complaint, SOF paragraphs 4, 5c, 5d, 5e, 5f, 8 and 9.

E.    **Conclusion**

For the reasons set forth above, it is respectfully recommended that Defendants' Motion

for Partial Dismissal of Plaintiff's Amended Complaint (ECF No. 30) pursuant to Rule 12(b)(6) be granted in part and denied in part.

As to Count I, the Court recommends that Defendants' motion to dismiss Plaintiff's claim of sexual harassment/hostile work environment under Title VII be granted with prejudice, and that Plaintiff's claim of disparate treatment based on sex under Title VII be denied with regard to failure to promote and granted with prejudice in all other respects.

As to Count II, the Court recommends that Defendants' motion to dismiss Plaintiff's claim of sexual harassment/hostile work environment under the PHRA be granted with prejudice, and that Plaintiff's claim of disparate treatment based on sex under the PHRA be denied with regard to failure to promote and granted with prejudice in all other respects.

As to Count III, the Court recommends that Defendants' motion to dismiss Plaintiff's claim of age-based harassment/hostile work environment under the ADEA be granted with prejudice, and that Plaintiff's claim of disparate treatment based on age under the ADEA be denied with regard to selective enforcement of drug/alcohol testing and granted with prejudice in all other respects.

As to Count IV, the Court recommends that Defendants' motion to dismiss Plaintiff's claim of age-based harassment/hostile work environment under the PHRA be granted with prejudice, and that Plaintiff's claim of disparate treatment based on age under the PHRA be denied with regard to selective enforcement of drug/alcohol testing and granted with prejudice in all other respects.

The Court further recommends that Defendants' motion to dismiss Plaintiff's retaliation claims under Title VII and the PHRA in Counts VII and VIII, respectively, be granted with prejudice, and Counts VII and VIII be dismissed in their entirety.

The Court further recommends that Defendants' motion to dismiss Defendants Janus Hotels, Janus American, and HELP from this lawsuit be denied.

Finally, the Court recommends that Defendants' Motion to Strike Statement of Facts paragraphs 4 through 9 and 26 from the federal amended complaint (ECF No. 28) as irrelevant and prejudicial be granted as to statement of facts paragraphs 5a, 5b, 6 and 7, and denied as to paragraphs 4, 5c, 5d, 5e, 5f, 8, and 9. It is further recommended that the reference to "hostile work environment" in statement of facts paragraph 26 be stricken.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.


January 10, 2012                                    BY THE COURT:

                                    _____
                                    LISA PUPO LENIHAN
                                    Chief United States Magistrate Judge


cc:     All Counsel of Record
        *Via Electronic Mail*